## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERATION FOR AMERICAN )
IMMIGRATION REFORM )
25 Massachusetts Ave., NW, Suite 330 )
Washington, DC 20001, )
 )
          Plaintiff, )
 )
v. )        Civil Action No.
 )
UNITED STATES IMMIGRATION AND )
CUSTOMS ENFORCEMENT )
500 12th St., SW )
Washington, DC 20024, )
 )
         Defendant. )
_____ )

### COMPLAINT

Plaintiff Federation for American Immigration Reform ("FAIR") brings this action for injunctive and other appropriate relief against Defendant United States Immigration and Customs Enforcement ("ICE") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. FAIR alleges the following grounds:

### JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(A)(vii), 552(a)(4)(B), 552(a)(6)(C)(i) and 28 U.S.C. § 1331. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

2.      FAIR is a non-profit educational foundation organized under the laws of the

District of Columbia that has its principal place of business at 25 Massachusetts Ave., NW, Suite

330, Washington, DC 20001.  FAIR seeks to educate the citizenry on, and increase public

awareness of, immigration issues, and to hold the nation's leaders accountable for enforcing the

nation's immigration laws.  In furtherance of its public interest mission, FAIR regularly requests

access to the public records of federal agencies, entities, and offices, and widely disseminates its

findings to the public.  FAIR is also the successor in interest to the Immigration Reform Law

Institute ("IRLI").  Previously, IRLI was a supporting organization for FAIR, but in or around

early August 2025, it merged into FAIR.[1]

3.      ICE is a component of the United States Department of Homeland Security

("DHS"), established within the Executive Branch of the United States Government. It is

headquartered at 500 12th St., SW, Washington, DC 20024.  ICE is an agency within the

meaning of 5 U.S.C. § 552(f)(1).  ICE has possession, custody, and control of certain public

records to which FAIR seeks access.

## STATUTORY FRAMEWORK

4.      FOIA requires federal agencies, upon request, to make agency records "promptly

available to any person."  5 U.S.C. § 552(a)(3)(A).

5.      An agency must determine whether to comply with a FOIA request within twenty

(20) business days of receiving the request, and "shall immediately notify the person making

such request of such determination and the reasons therefor."  5 U.S.C. § 552(a)(6)(A)(i).

---

[1] *See* FAIR Press Release, "FAIR Expands Its Impact by Adding Litigation and Investigations Divisions: IRLI integration creates 'a unique opportunity,' August 20, 2025, https://www.fairus.org/press-release/fair-irli-merger-litigation-and-investigations.

6.      In order for an agency's response to constitute a "determination" within the meaning of FOIA, an agency must: i) gather and review the documents; ii) determine and communicate the scope of the documents it intends to produce or withhold, and the reasons for withholding any documents; and iii) inform the requester that it can appeal whatever portion of the "determination" is adverse. *See Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 186-88 (D.C. Cir. 2013).

7.      Although "a 'determination' does not require actual production of the records to the requester at the exact same time that the 'determination' is communicated to the requester," it "must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future." *Id.* at 188.

8.      FOIA expressly provides that it "does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in" the statute itself. 5 U.S.C § 552(d).

9.      FOIA places the burden on agencies to prove they properly withheld information under a statutory FOIA exemption, not on requesters to prove that the records they seek are non-exempt. *See* 5 U.S.C. § 552(a)(4)(B). There are nine such exemptions, *see* 5 U.S.C. § 552(b)(1)-(b)(9), which "are explicitly made exclusive," *Milner v. Dept. of the Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks and citations omitted).

10.      As courts have repeatedly stressed, Congress's "basic purpose" in structuring FOIA "reflected 'a general philosophy of ***full agency disclosure unless information is exempted under clearly delineated statutory language.***'" *Dept. of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965) (emphasis added). *See also Dept. of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Dept. of*

*Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 777 (1989)) (explaining that
"the core purpose of FOIA . . . is contributing significantly to public understanding of the
operations or activities of the government") (emphasis and internal quotation marks omitted);
*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 17 (1974) (quoting *Frankel v. SEC*,
460 F.2d 813, 816 (2d Cir. 1972), *cert. denied*, 409 U.S. 889 (1972)) ("Congress 'was principally
interested in opening administrative processes to the scrutiny of the press and general public'").

11.    Both Congress in amending FOIA over time, and courts in applying and
interpreting the statute, have emphasized how much FOIA is deliberately intended to favor
requesters over the agencies. *See, e.g.*, 5 U.S.C. § 552(a)(8)(A)(i)(I)–(II)) (requiring an agency to
disclose information even if covered by an exemption unless it "reasonably foresees that
disclosure would harm an interest protected by an exemption," or if disclosure is legally
prohibited); *Rose*, 425 U.S. at 361 ("these limited exemptions do not obscure the basic policy
that disclosure, not secrecy, is the dominant objective of [FOIA]"); *Wis. Project On Nuclear
Arms Control v. Dept. of Commerce*, 317 F.3d 275, 280 (D.C. Cir. 2003)(quoting *Dept. of State
v. Ray*, 502 U.S. 164, 173) (1991) ("FOIA ... mandates a 'strong presumption in favor of
disclosure'").

12.    To the extent that an agency asserts that it may withhold records under Exemption
7, it must show that those records were "compiled for law enforcement purposes" within the
meaning of 5 U.S.C. § 552(b)(7).  In some circuits the courts of appeals have held that the
exemption applies *per se*, i.e., that all records are presumed to be law-enforcement records
merely because an agency is a law-enforcement agency. *See e.g., Jordan v. Dept. of Justice*, 668
F.3d 1188, 1195-97 (10th Cir. 2011); *Jones v. FBI*, 41 F.3d 238 (6th Cir. 1994); *Ferguson v.
FBI*, 957 F.2d 1059 (2d Cir. 1992); *Kuehnert v. FBI*, 620 F.2d 662 (8th Cir. 1980); *Irons v. Bell*,

4

596 F.2d 468, 474-76 (1st Cir. 1979).  However, in the District of Columbia Circuit as in a few

others, an agency must show that the records meet a two-part "rational nexus" test to qualify as

law-enforcement records covered by Exemption 7.  *See PEER v. U.S. Section, Int'l Boundary &*

*Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014); *Pratt v. Webster*, 673 F.2d

408 (D.C. Cir. 1982).  *See also Abdelfattah v. DHS*, 488 F.3d 178 (3d Cir. 2007); *Church of*

*Scientology v. Dept. of Def.*, 611 F.2d 738 (9th Cir. 1979).

13.    The first part of the rational nexus test is that the investigatory activity giving rise

to the records must relate "to the enforcement of federal laws ..." *Pratt*, 673 F.2d at 420.  To

demonstrate this, the agency must identify both "***a particular individual or a particular incident***

***as the object of its investigation*** and the connection between that individual or incident and a

possible security risk or violation of federal law." *Id.* (emphasis added). This requires the agency

to establish that it "acted within its principal function of law enforcement, rather than merely

engaging in a general monitoring of private individuals' activities." *Id.* However, law

enforcement purposes include "proactive steps designed to prevent criminal activity and to

maintain security," not just investigation and enforcement of past criminal activity. *PEER*, 740

F.3d at 203, quoting *Milner v. Dept. of the Navy*, 562 U.S. 562, 583 (2011) (Alito, J., concurring)

("Likewise, steps by law enforcement officers to prevent terrorism surely fulfill law enforcement

purposes.")

14.    The second part of the rational nexus test is that the agency must also establish the

nexus between that investigation and one of its law enforcement duties through "information

sufficient to support at least 'a colorable claim' of its rationality." *Pratt*, 673 F.2d at 421. That is,

the agency must provide more than a "pretextual or wholly unbelievable" basis for that

connection, although it is not necessarily required that the investigation lead to an enforcement

proceeding. *Id.* Additionally, if the claim of "law enforcement purpose" is being made by a criminal law enforcement agency, courts "may apply a more deferential attitude toward" that agency's claim. *Id.* at 418.

15.    More specifically, if an agency invokes Exemption (7)(E) for records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E), the D.C. Circuit has held that to be exempt, disclosure of either "techniques or procedures" or "guidelines" must satisfy the "risk of circumvention of the law" prong, regardless of the category of materials. *See Pub. Employees for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014). This means the agency must "demonstrate[] logically how the release of … information might create a risk of circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quoting *PHE, Inc. v. Dept. of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993)). The D.C. Circuit has characterized this as a "relatively low bar," *Mayer Brown* at 1194; however, courts have found agencies failed to satisfy it. *See, e.g., ACLU of N. California v. Dept. of Justice*, 880 F.3d 473, 492 (9th Cir. 2018); *100Reporters v. Dept. of State*, 602 F. Supp. 3d 41, 82 (D.D.C. 2022).

16.    FOIA Exemption 6 authorizes withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Courts' analysis under Exemption 6 involves balancing the public's right to disclosure against the individual's right to privacy. *See Rose*, 425 U.S. at 372; *Fund for Constitutional Govt. v. Nat. Archives & Records Serv.*, 656 F.2d 856, 862 (D.C. Cir. 1981). Exemption 6 does not apply where "no significant privacy interest is implicated." *Natl.*

*Assn. of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). And even if

substantial privacy interests are implicated, Exemption 6 does not prohibit disclosure unless such

interests "clearly" outweigh the public interest in opening agency action to the light of public

scrutiny. *News-Press v. DHS*, 489 F.3d 1173, 1205 (11th Cir. 2007. Thus, under Exemption 6,

FOIA's presumption favoring disclosure "is at its zenith," *Natl. Assn. of Home Builders v.

Norton*, 309 F.3d 26, 37 (D.C. Cir. 2002) and the balance is "tilted emphatically in favor of

disclosure." *Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984).

17.     For an agency to properly invoke Exemption 5 to withhold "inter-agency or intra-

agency memorandums or letters that would not be available by law to a party other than an

agency in litigation with the agency," 5 U.S.C. § 552(b)(5), such a record must fall under at least

one recognized "privilege against discovery under judicial standards that would govern litigation

against the agency that holds it." *Dept. of the Interior v. Klamath Water Users Protective Assn.*,

532 U.S. 1, 8 (2001).

18.     To the extent that an agency can rely on the attorney-client privilege in invoking

Exemption 5, it must demonstrate that the material it withheld both "involves 'confidential

communications between an attorney and his client'" and "relates to 'a legal matter for which the

client has sought professional advice.'" *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F.Supp.2d

252, 267 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. Dept. of the Air Force*, 566 F.2d 242,

252 (D.C. Cir. 1977)).

19.     To the extent that an agency can rely on the work product privilege in invoking

Exemption 5, the records must have been prepared by attorneys "in anticipation of litigation."

*Maine v. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002) (quoting Fed. R. Civ. P. 26 (b)(3)(A)).

This means the agency bears the burden of proving the records were actually "created because

of" specific lawsuits, and not merely "prepared in the ordinary course of business or …
[documents that] would have been created in essentially similar form irrespective of the
litigation." *Id.* at 70 (quoting United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)
(internal quotation marks omitted)).

20.     To the extent that an agency can rely on the deliberative process privilege in
invoking Exemption 5, the agency bears the burden to show that the records are both
"predecisional and deliberative." *Ancient Coin Collectors Guild v. Dept. of State*, 641 F.3d 504,
512 (D.C. Cir. 2011) (quoting *Mapother v. Dept. of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993)
(citing *Wolfe v. Dept. of Health & Human Services*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en
banc))).  Predecisional records are those "prepared in order to assist an agency decisionmaker in
arriving at his decision," *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184
(1975), while a record is only deliberative when it "makes recommendations or expresses
opinions on legal or policy matters."  *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).
Thus, this privilege only "covers recommendations, draft documents, proposals, suggestions, and
other subjective documents which reflect the personal opinions of the writer rather than the
policy of the agency." *Coastal States Gas Corp. v. Dept.. of Energy*, 617 F.2d 854, 866 (D.C.
Cir. 1980).  Purely factual material "that does not reveal the deliberative process is not protected
by this exemption." *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quoting *Paisley v.
CIA*, 712 F.2d 686, 698 (D.C. Cir. 1983), vacated in part on other grounds, 724 F.2d 201 (D.C.
Cir. 1984) (internal quotation marks omitted)).  Moreover, "even if [a] document is predecisional
at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the
agency position on an issue or is used by the agency in its dealings with the public." *Coastal
States*, 617 F.2d at 866.

21.    In 2016, Congress extensively amended FOIA. *See* FOIA Improvement Act of

2016, Pub. L. 114-185, 130 Stat. 538 (2016).

22.    In its 2016 amendments to FOIA, Congress added the foreseeable harm standard,

which is currently codified as 5 U.S.C. § 552(a)(8)(A) and provides in pertinent part:

> An agency ***shall***—
> (i) withhold information under this section ***only if***—
> (I) the agency reasonably foresees that disclosure would harm an interest protected by an
> exemption described in subsection (b); or
> (II) disclosure is prohibited by law; ***and***
> (ii)
> (I) consider whether partial disclosure of information is possible whenever the agency
> determines that a full disclosure of a requested record is not possible; ***and***
> (II) take reasonable steps necessary to segregate and release nonexempt information
>
> [emphasis added]

23.    In *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C.

Cir. 2021), the D.C. Circuit explained at length Congress's purpose in adding the foreseeable

harm standard to the statute:

> Congress adopted the FOIA Improvement Act in part out of "concerns that some
> agencies [were] overusing FOIA exemptions that allow, but do not require, information
> to be withheld from disclosure." S.REP.NO. 4, 114th Cong., 1st Sess. 2 (2015); see also
> H.R.REP.NO. 391, 114th Cong., 2d Sess. 9 (2016) ("[T]here is concern that agencies are
> overusing these exemptions to protect records that should be releasable under the law.").
> ***Congress was particularly concerned with increasing agency overuse and abuse of***
> ***Exemption 5 and the deliberative process privilege.*** H.R.REP.NO.391, at 9–10 ("The
> deliberative process privilege is the most used privilege and the source of the most
> concern regarding overuse."); see also S.REP.NO.4, at 3. Congress added the distinct
> foreseeable harm requirement to foreclose the withholding of material unless the agency
> can "articulate both the nature of the harm [from release] and the link between the
> specified harm and specific information contained in the material withheld."
> H.R.REP.NO.391, at 9. Agencies cannot rely on "mere 'speculative or abstract fears,' or
> fear of embarrassment" to withhold information. S.REP.NO.4, at 8.
>
> [emphasis added]

24.    The *Reporters Committee* court further stressed:

In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that ***agencies must concretely explain how disclosure "would"—not "could"—adversely impair internal deliberations.*** [...] A perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the agency will not suffice. [...] Instead, what is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward.

*Id.* at 369-370. [emphasis added]

25.    The district courts both in the District of Columbia and elsewhere have also repeatedly required disclosure by agencies for failing to fully apply the foreseeable harm standard specifically to records they claim are covered by Exemption 5. *See e.g., Judicial Watch, Inc. v. Dept. of Commerce*, 375 F.Supp.3d 93 (D.D.C. 2019); *Rosenberg v. Dept. of Defense*, 342 F.Supp.3d 62 (D.D.C. 2018); *Ecological Rights Foundation v. FEMA*, No. 16-cv-05254-MEJ, 2017 WL 5972702 (N.D. Cal., Nov. 30, 2017).

26.    If an agency provides an adverse determination to a FOIA request, the requester must first exhaust administrative remedies by filing an administrative appeal with the agency rather than immediately filing suit. *See Oglesby v. Dept. of the Army*, 920 F.2d 57 (D.C. Cir. 1990). Once the requester has filed an administrative appeal, the agency then has twenty (20) working days to decide the appeal or the requester may then bring suit. *See* 5 U.S.C. § 552(a)(6)(C)(i).

27.    If, however, an agency does not provide any determination of a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. *See* 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B). Put another way, when an agency does not comply with FOIA's time limits, the requester can seek

immediate judicial review, despite not having filed an administrative appeal: courts refer to this as "constructive exhaustion." *Khine v. DHS*, 943 F.3d 959, 966 (D.C. Cir. 2019) (citations omitted).

28.    The limitations period within which a requester may file suit over a FOIA claim is six years from when such a cause of action first "accrues." *See Spannaus v. Dept. of Justice*, 824 F.2d 52, 55-59 (quoting 28 U.S.C. § 2401(a)).  Because of FOIA's provisions for constructive exhaustion, such a cause of action can accrue as soon as an agency fails to make a determination within one of the statute's deadlines, either from the initial request or for the disposition of an administrative appeal. *See id.* at 57-59.

29.    Finally, FOIA authorizes a court to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  The statute provides that "a complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).  While a *pro se* non-attorney plaintiff may not recover attorney fees, *see Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C. Cir. 1993), a law firm representing itself is eligible for an award of attorney fees. *See Baker & Hostetler LLP v. Dept. of Commerce*, 473 F.3d 312 (D.C. Cir. 2006).

## STATEMENT OF FACTS

### OPERATION TALON AND ITS SUSPENSION OR TERMINATION

30.    On February 7, 2021, the *Washington Post* reported that the incoming Biden Administration had, among other actions to undermine immigration enforcement, shut down

11

Operation Talon (an immigration enforcement operation planned in the final days of the first Trump Administration to focus heavily on illegal alien sex offenders). *See* Nick Miroff and Maria Sacchetti, *New Biden rules for ICE point to fewer arrests and deportations, and a more restrained agency*, WASH. POST, Feb. 7, 2021, https://www.washingtonpost.com/national/new-biden-rules-for-ice-point-to-fewer-arrests-and-deportations-and-a-more-restrained-agency/2021/02/07/faccb854-68c6-11eb-bf81-c618c88ed605_story.html

31.     On February 18, 2021, eighteen state attorneys general urged then-President Biden to revive Operation Talon, with then-Missouri Attorney General Eric Schmitt stating "[t]he cancellation of this program effectively broadcasts to the world that the United States is now a sanctuary jurisdiction for sexual predators ... This message creates a perverse incentive for foreign sexual predators to seek to enter the United States illegally and assault more victims, both in the process of unlawful migration and after they arrive." Caitlin McFall, *Eighteen state AGs urge Biden to reverse cancellation of ICE operation targeting sex offenders*, Fox News, Feb. 18, 2021, https://www.foxnews.com/politics/18-state-ags-urge-biden-to-reverse-decision-to-cancel-ice-operation-targeting-sex-offenders.

## FAIR'S FOIA REQUEST TO ICE (2021-ICFO-35533)

32.     On February 18, 2021, IRLI Investigations Associate Jason Hopkins submitted a FOIA request on behalf of FAIR to ICE via email requesting records pertaining to the planning, execution, and cancellation of Operation Talon.

33.     At some time after February 18, 2021 and on or before May 16, 2021, ICE acknowledged receipt of FAIR's above-noted FOIA request by email to Mr. Hopkins, and assigned the request the reference number 2021-ICFO-35533.

12

34.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i) and the ten-day extension under 5 U.S.C. §
552(a)(6)(B), ICE was required to make a determination whether to comply with FAIR's FOIA
request within twenty (20) working days after receipt, and to notify FAIR immediately of its
determination, the reasons therefor, and the right to appeal any adverse determination.
Accordingly, assuming ICE received FAIR's FOIA request on February 18, 2021, ICE's
determination of FAIR's request was due by approximately March 18, 2021, at the earliest.

35.     Assuming ICE received FAIR's FOIA request on February 18, 2021 and was
entitled to and exercised the ten-day extension authorized by 5 U.S.C. § 552(a)(6)(B) (although
FAIR is unaware of either), ICE's determination of FAIR's request would have been due by
approximately April 1, 2021, at the latest.

36.     On or about May 16, 2021, ICE emailed Mr. Hopkins that due to the increasing
number of FOIA requests received by ICE, it could encounter some delay in processing the
request.

37.     Mr. Hopkins ceased to be employed by IRLI as of approximately March 31, 2024.

38.     Out of an abundance of caution, IRLI and then FAIR kept Mr. Hopkins' work
email inbox active as agencies continued to send it responses to FOIA requests.

39.     On March 18, 2025, more than four years after FAIR's FOIA request was
submitted, ICE sent an email to Mr. Hopkin's IRLI work email inbox acknowledging that the
request had been received by ICE on the day it was sent, February 18, 2021 and further stating in
pertinent part:

> By letter, dated May 26, 2021, we advised you that due to the increasing number of FOIA
> requests received by this office, we could encounter some delay in processing your
> request. We sincerely apologize for the delay and any inconvenience it may have caused.
>
> Before we begin the time-consuming review process, we want to ensure that you are still
> interested in continuing the processing of this request. Please indicate your continued

13

interest in pursuing these records within 30 days from the date of this letter, or we will assume you are no longer interested in this FOIA request, and the case will be administratively closed.

40.     On March 20, 2025, IRLI responded on behalf of FAIR by email to ICE's above-noted email, indicating continued interest in FAIR's FOIA request, objecting to any administrative closure, notifying ICE that Mr. Hopkins was no longer with IRLI and requesting that any further correspondence be sent to undersigned counsel.

41.     On April 15, 2025, IRLI sent a second follow-up email to ICE inquiring as to the status of FAIR's FOIA request.

42.     On July 10, 2025, IRLI sent a third follow-up email to ICE inquiring as to the status of FAIR's FOIA request, indicating an inclination to file suit and extending as a courtesy a request to ICE for any reasons why it should not do so.

43.     On July 18, 2025, almost four and a half years after FAIR's FOIA request was submitted, ICE emailed a "final response" to the request to Mr. Hopkins's email inbox, despite having been previously notified that Mr. Hopkins was no longer employed by IRLI.

44.     ICE's final response included approximately 32 pages of records, most of which were heavily redacted and approximately half of which were completely redacted.

45.     ICE's final response primarily invokes FOIA Exemptions 5 and 7, including 7(E). ICE also invoked Exemption 6 to withhold or redact a smaller portion of records.

46.     ICE's final response also included a letter signed by Deputy FOIA Officer Megan Davis restating the standards for the FOIA exemptions asserted, and also stating that "ICE considered the foreseeable harm standard when reviewing the record set," but not providing any further detail or explanation of how it had done so.

14

## FAIR'S ADMINISTRATIVE APPEAL (2025-ICAP-00400)

47.    On August 20, 2025, FAIR submitted a timely administrative appeal of ICE's final response (within 90 calendar days of an adverse decision).  *See* 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa); 6 C.F.R. § 5.8(a)(1).

48.    On August 20, 2025, ICE sent an email to Mr. Hopkins' email inbox acknowledging receipt of the administrative appeal and assigning it the tracking number 2025-ICAP-00400, again despite being notified that Mr. Hopkins was no longer employed by IRLI or FAIR.

49.    On September 18, 2025 (the last working day within FOIA's 20-day deadline to adjudicate FAIR's administrative appeal without triggering constructive exhaustion, see 5 U.S.C. § 552(a)(6)(C)(i)), ICE sent a letter by email again to Mr. Hopkins' email inbox disposing of the appeal. The letter was signed by Emily Fehringer for Sara Jazayeri, Chief of the Government Information Law Division of ICE's Office of the Principal Legal Advisor.

50.    ICE's above-noted letter deciding FAIR's administrative appeal stated in pertinent part that, "upon a complete review of the information withheld by ICE in the initial determination on your FOIA request, the withholding of this information was proper in all respects, and the information is exempt from disclosure under the applicable provisions of 5 U.S.C. § 552 cited above."

## CAUSE OF ACTION/CLAIM FOR RELIEF

### Violation of FOIA: Unlawful Withholding of Agency Records

51.    FAIR realleges paragraphs 1 through 50 as if fully stated herein.

52.    ICE has failed to make responsive records available to FAIR.

53.    ICE has unlawfully withheld responsive non-exempt agency records and/or portions of records from FAIR and continues to do so.

54.    ICE has improperly invoked multiple statutory exemptions under FOIA to unlawfully withhold responsive non-exempt agency records and/or portions of records from FAIR and continues to do so.

55.    To the extent ICE has invoked FOIA Exemption 7 to withhold responsive records "compiled for law enforcement purposes," ICE has not shown that any such records meet the "rational nexus" test to qualify as law-enforcement records. *See PEER; Pratt.*

56.    To the extent ICE has invoked FOIA Exemption 7(E) to withhold responsive records of law enforcement techniques, procedures or guidelines, ICE has not "demonstrated logically how the release of … information might create a risk of circumvention of the law." *Mayer Brown*, 562 F.3d at 1194 (quoting *PHE*, 983 F.2d at 251).

57.    To the extent ICE has invoked FOIA Exemption 6 to withhold responsive records on the basis of personal privacy, it has not balanced that against the public's right and interest in disclosure.

58.    To the extent ICE has invoked FOIA Exemption 5 to withhold responsive records on the basis of one or more privileges that would apply in other litigation, it has neither shown that such privileges apply nor has it properly applied the foreseeable harm standard.

59.    As a result of ICE's unlawful withholding, FAIR and the public have been denied access to agency records to which FAIR is lawfully entitled under FOIA, 5 U.S.C. § 552(a)(3)(A).

**REQUESTED RELIEF**

WHEREFORE, FAIR respectfully requests that this Court:

(A) order ICE to produce, by a date certain, any and all non-exempt agency records responsive to FAIR's FOIA request and a detailed *Vaughn* index of any responsive agency records or portions of records withheld under claim of exemption;

(B) enjoin ICE from continuing to withhold any and all non-exempt agency records responsive to FAIR's FOIA request;

(C) award FAIR its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(D) grant FAIR such other relief as the Court deems just and proper.

Dated: Oct. 9, 2025                    Respectfully submitted,

David L. Jaroslav, DC Bar No. 90021286
Email: djaroslav@fairus.org
Mateo Forero-Norena, DC Bar No. 90002605
Email: mforero@fairus.org
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
FAX: (202) 387-3447

*Counsel for Plaintiff*